IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 12-05293 (ESL)

TERESA GUILLEN LUGO                       CHAPTER 13

    Debtor

OPINION AND ORDER

There are several interrelated issues pending in this bankruptcy case and in adversary proceeding number AP 14-00175. All the controversies involve the debtor, Teresa Guillen Lugo (hereinafter the "Debtor" or "Plaintiff"), and creditors Héctor Baez Rivera, Nancy Casanova Vázquez and Ileana Fontanez, Esq. (hereinafter referred to as "Creditors" or "Defendants"). Creditors rights in this case stem from a judgement entered in Civil case number EAC2007-0500 in the amount of $216, 760.73. Collection of the judgment within the bankruptcy proceedings has generated issues on the extent of the automatic stay, and the responsibility of the conjugal partnership and the non-filing spouse to satisfy the same.

The issues pending in the bankruptcy case are the creditors' motion for clarification of the protection granted by the automatic stay, creditors' motion requesting the lift of stay regarding the private property of the non-debtor spouse, and the Debtor's objection to the proof of claim filed by the creditors.

The *Motion Requesting Order Clarifying Protection Granted by Automatic Stay* filed by creditors Héctor Baez Rivera, Nancy Casanova Vázquez and Ileana Fontanez, Esq. (Docket No. 105) contends that the automatic stay does not protect Mr. Victor Roberto Fernández, the non-

-1-

filing spouse, nor his private property, against the Creditors' collection efforts, which are based on a final state court judgment. The Debtor filed her *Opposition to "Motion for Order Clarifying Protection Granted by Automatic Stay* (Docket No. 121). The Creditors' *Motion Requesting Lifting of Stay with Regard to Non-Debtor Spouse and His Private Property* (Docket No. 138) and the Debtor's *Opposition to Baez and Casanova's Motion for Relief from Stay and Memorandum of Law in Support Thereof* in which the Debtor argues that the Creditors' claim is owed by the conjugal partnership formed between Debtor and her husband, Mr. Fernández, without joint and several liability of Mr. Fernández. The Debtor alleges that the Creditors have a community claim pursuant to section 11 U.S.C. §101(7) and that the same will be repaid and discharged through the Chapter 13 plan with community property for the benefit of the conjugal partnership and the non-filing spouse (Docket No. 147). The Creditors filed a *Brief in Support of Motion Requesting Lifting of Stay with Regard to Non-Debtor Spouse and his Private Property.* (Docket No. 157). The Debtor and Mr. Victor Fernández also filed their Reply as to Movant's Brief (Docket No. 164).

On August 22, 2017, the Debtor's discharge under 11 U.S.C. §1328(a) was entered (Docket No. 199). The Debtor's discharge in the lead case has mooted the Creditors' contention that the automatic stay does not protect Mr. Victor Roberto Fernández, the non-filing spouse, nor his private property, against their collection efforts which are based on a final state court judgment. As explained below, the final decision ("Sentencia") issued by the Supreme Court of Puerto Rico revoked the decision allowing the Creditors to take action and collect from the private property of the non-filing spouse, and stayed all actions until the automatic stay is lifted by this court. However, the legal issue whether the non-Debtor and his private property and the conjugal partnership were protected by the automatic stay is not moot in its entirety and is intertwined with

-2-

the adversary proceeding which is for an alleged violation of the automatic stay pursuant to 11 U.S.C. §362(a)(2) and (6).

### Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

### Procedural Background

The travel of this case before the state (Puerto Rico) courts and the bankruptcy court has a convoluted history. The same is detailed to place the current issues in perspective.

The Debtor filed a Chapter 13 bankruptcy petition on July 3, 2012. The Debtor included the Creditors' claim as disputed in *Schedule F-Creditors Holding Unsecured Non-Priority Claims* and disclosed that the claim was incurred as part of a December 2011 Judgment for damages on account of civil complaint against the legal partnership of Debtor and Mr. Victor Fernández. The amount of the claim for each claimant was $107,000 for a total amount of $214,000 (Docket No. 1, pg. 28). The court notes that the Debtor has no creditors holding unsecured priority claims to report on Schedule E. On October 22, 2012, the Creditors filed proof of claim #4-1 in the amount of $216,760.73 plus legal interest originating from a final state court Judgment in civil case #EAC 2007-0500; Hector Luis Baez Rivera et al. v. Victor M. Fernández and Teresa Guillen Lugo.

On July 17, 2014, the Debtor filed an adversary proceeding (Adversary proceeding No. 14-00175) against Hector Baez Rivera; Nancy Casanova and Ileana Fontanez premised upon an alleged willful violation of the automatic stay pursuant to 11 U.S.C. §362(a)(2) and (6). On October 20, 2014, the Debtor filed an *Objection to Proof of Claim No. 4 Filed by Hector I. Baez*

*Rivera and Nancy Casanova Vazquez* requesting the disallowance of proof of claim 4-1 since the Debtor and her spouse filed on August 24, 2012 a relief of judgment complaint in state court requesting that the Judgment be revoked or in the alternative that the disbursement of funds to Creditors be held in abeyance (Docket No. 57).

On October 28, 2014, the Debtor filed a *Motion for Order to Stop Trustee Disbursements to Hector I. Baez Rivera and Nancy Casanova Vazquez* (Docket No. 61). On November 10, 2014, the Creditors filed their *Opposition to Debtor's Urgent Motion to Stop Chapter 13 Trustee's Disbursements to Hector I. Baez Rivera and Nancy Casanova Vazquez* on the grounds that the Relief from Judgment was denied by the state court and the appeal was dismissed by the Appellate Court. A certiorari petition was filed by Mr. Fernández with the Supreme Court of Puerto Rico and was pending adjudication at the time. The Creditors also request the Court to order the Chapter 13 Trustee to continue making the disbursements which were stayed on October 3, 2014 (Docket No. 62). On November 26, 2014, the Court denied the motion filed by the Debtor requesting to stop disbursement to the Creditors (Docket No. 63).

On December 4, 2014, the Court ordered that the Debtor's objection to claim #4 filed by Creditors and their reply (Docket No. 62) be continued without a date pending a decision in AP 14-00175 (Docket No. 64). On December 22, 2014, the Creditors filed a *Motion for Entry of Order, Instructing Chapter 13 Trustee to Make Disbursements as per Confirmed Plan Dated November 29, 2012* requesting the Court to order the Chapter 13 Trustee to make the payments for the months of October, November and December 2014 and to make future payments to the Creditors (Docket No. 66).

On January 30, 2015, the Court ordered the Trustee to state his position on the Motion requesting entry of Order filed by the Creditors (Docket No. 66) within fourteen (14) days (Docket No. 71). On February 12, 2015, the Chapter 13 Trustee filed a *Motion to Comply with Court*

-4-

*Order* informing the following: (i) the Trustee disbursed to Creditors the amount of $4,970.61; (ii) to avoid erroneous disbursements, and consequently a process to recover funds, the Trustee stopped making disbursements to Creditors after the objection to claim was filed by Debtor. The funds are reserved in the case; and (iii) if the Court understands that the funds must be distributed to Creditors, the same will be disbursed on the next disbursement date. However, if the Court agrees with the Trustee's determination of not making disbursements due to the allegations in the contested matter, then the funds will be reserved until the resolution of Debtor's objection to claim or until a Court Order is entered (Docket No. 74). On February 23, 2015, the court denied the motion filed by the Debtor requesting entry of Order for the Trustee to make disbursements (Docket No. 76), without prejudice to the Debtor may renew request at the hearing being scheduled to consider the motion for post confirmation modification (Docket No. 68) (Docket No. 76). On April 7, 2015, the Creditors filed a *Supplement of Their Reply to Debtor's Objection to Claim No. 4 as Filed at Docket No. 62 and Request for an Order to the Chapter 13 Trustee to Continue the Disbursements* (Docket No. 79). On April 8, 2015, a hearing was held in which, amongst other matters, the motion to order Trustee to make disbursements (Docket No. 66) was denied for the reasons stated in open court. (Docket No. 81).

On November 2, 2015, the Creditors filed a *Motion for Entry of Order, Instructing Chapter 13 Trustee to Make Disbursements as per Confirmed Plan* (Docket No. 98). On November 6, 2015, the Trustee filed his *Position as to Motion for Entry of Order, Instructing Chapter 13 Trustee to make Disbursements as per Confirmed Plan* disclosing that he did not have an opposition to said request (Docket No. 99).

On November 23, 2015, the Creditors filed a *Motion Requesting Order Clarifying Protection Granted by Automatic Stay* arguing that the automatic stay does not protect Mr. Victor Roberto Fernández, the non-filing spouse nor his private property against the Creditors' collection

efforts which are based on a final state court judgment (Docket No. 105). On December 2, 2015, the Creditors filed a motion for an *Entry of Order Requesting that Payments to Creditor be Resumed and that Funds Held in Escrow be Released* (Docket No. 107) and the same was granted on December 9, 2015 (Docket No. 113). On December 9, 2015, the Court granted Debtor's motion to modify the confirmed plan and to confirm the amended plan dated November 10, 2015 (Docket No. 114).

On December 25, 2015, the Debtor filed an *Opposition to "Motion for Order Clarifying Protection Granted by Automatic Stay* arguing as follows: (i) under the Rooker-Feldman doctrine, the Puerto Rico Supreme Court's determination that the Creditors' claim is strictly owed by the Guillen and Fernández conjugal partnership is precluded from collateral attack. The Puerto Rico Court of Appeals on April 12, 2013 "… clarified that the conjugal partnership was protected by the automatic stay, subsequent proceedings before the Puerto Rico Supreme Court strictly entailed a determination whether there was joint and several liability of Mr. Fernández, independent of the conjugal partnership liability, that could allow collection against him, such as in cases of independent co-debtors. The Supreme Court answered that question in the negative;" (ii) the Supreme Court held that the debt's conjugal partnership nature impeded collection from Mr. Fernández's private property; and (iii) the conjugal partnership is subjected to the bankruptcy proceeding and its property and income are satisfying the Creditors' claim. Moreover, the Creditors' claim is being paid with disposable income that is generated by both the conjugal and private property of both spouses (Docket No. 121).

On March 18, 2016, a hearing was held as to the Creditors' motion requesting Order clarifying protection granted by the automatic stay (Docket No. 105) and the Debtor's opposition (Docket No. 121). The Debtor consents that the automatic stay does not extend to the private property of Mr. Fernandez, but that the liability on the debt is subject to the decision by the

Supreme Court of Puerto Rico. The Bankruptcy Court stated that it will not review decisions by the Supreme Court of Puerto Rico under the Rooker-Feldman doctrine (See Docket No. 128). The court stated that the matter was taken under advisement and will be decided together with matters pending in AP 14-00175 (Docket No. 132).

On April 16, 2016, the Creditors filed a *Motion Requesting Lifting of Stay with Regard to Non-Debtor Spouse and His Private Property* pursuant to the Supreme Court's Judgment which proposed the alternate option that this Court lift the stay regarding Mr. Fernández's privately held property (Docket No. 138). On May 2, 2016, the Debtor filed her *Opposition to Baez and Casanova's Motion for Relief from Stay and Memorandum of Law in Support Thereof* arguing as follows: (i); the Debtor and her husband, Mr. Fernández, as co-administrators of the conjugal partnership, executed the sales contract in favor of the Creditors. The contract was for the benefit of the conjugal partnership; (ii) "[a]s was stated by the Puerto Rico Supreme Court judgment dated June 10, 2015, considering that Guillen and Fernández acted in benefit of the [c]onjugal [p]artnership, and in representation of the same, it is forceful to conclude that the judgment issued by the [i]nstant [c]ourt was imposed upon the [c]onjugal [p]artnership, and not upon Debtor Guillen and Mr. Fernández [i]n their personal capacity. To be clear, there is no joint and several liability of Mr. Fernández, independent of the conjugal partnership liability, which could allow collection against him, such as in cases of independent codebtors, such as in the case of credit contracts in which each spouse expressly becomes jointly and severally obligated to the creditor;" (iii) the Creditors' claim is owed solely by the conjugal partnership formed between the Debtor and Mr. Fernández, without joint and several liability of Mr. Fernández. The distinction between the conjugal partnership and its members precludes the presumption of joint liability between the individual spouses and the conjugal partnership. See Pauneto v. Nuñez, 115 D.P.R. 591, 596 (1984); (iv) the Creditors have a community claim pursuant to section 11 U.S.C. §101(7). The

Creditors' community claim will be repaid and discharged through the Chapter 13 plan with community property for the benefit of the conjugal partnership and the non-filing spouse; (v) pursuant to Article 1310 of the Puerto Rico Civil Code ("PR Civil Code"), the conjugal partnership's property responds on a subsidiary basis for private debts of the individual spouses, 31 L.P.R.A. §3663. There is no legal disposition providing that a spouse's private property is liable for the debts owed by the conjugal partnership; and (vi) the Creditors have no recourse against any specific property of the estate and Mr. Fernández does not independently respond on a joint basis for the community debt which is being satisfied through the plan by the conjugal partnership (Docket No. 147).

On May 10, 2016, a hearing was held as to the Creditors' motion requesting relief from the automatic stay in which the final hearing was continued to July 5, 2016 and the thirty (30) day determination period was waived. The movant was ordered to file a legal memorandum within thirty (30) days (Docket No. 149). On May 13, 2016, the Creditors filed a *Motion Requesting that Order be Entered Lifting Stay as to Party that Did Not Oppose Creditors' Motion* (Docket No. 153). On May 17, 2016, Mr. Fernandez filed a *Motion Adopting by Reference Opposition to Creditors Baez and Casanova's Motion for Relief from Stay and Memorandum of Law in Support Thereof* (Docket No. 155). On May 18, 2016, Mr. Fernandez filed his *Opposition to Motion for Entry of Order Lifting Stay* against respondent and his private property (Docket No. 156).

On June 8, 2016, the Creditors filed a *Brief in Support of Motion Requesting Lifting of Stay with Regard to Non-Debtor Spouse and his Private Property* contending the following: (i) the Supreme Court of Puerto Rico in its June 10, 2015 Judgment did not determine that the debt owed by the Debtor and her husband was a conjugal debt owed solely by the conjugal partnership and not by the individuals that comprise the conjugal partnership; (ii) in the case of Campolieto v. Anaya, 142 D.P.R. 587 (1997), the Supreme Court of Puerto Rico determined that the non-

debtor spouse responds to creditors with his or her privately owned property; and (iii) also in the case of Campolieto v. Anaya, the Debtor and his spouse were jointly responsible for paying a debt that they voluntarily incurred to finance a real property. Unlike the case of Campolieto v. Anaya, in this case both the Debtor and her husband, "… individually and in conjunction, committed a fraud in the alleged sale of privately owned property in which only Victor Fernández had an interest. This fraud caused damages to two innocent individuals and a court of law found Teresa Guillen, Victor Fernández and their conjugal partnership liable for the damages they had inflicted. The $214,700.93 owed was not a common ordinary debt incurred in the normal course of business but instead pecuniary indemnification that both spouses and the conjugal partnership were ordered to pay as a result of the fraud they connived and carried out" (Docket No. 157).

On July 8, 2016, the Debtor and her non-filing spouse filed a *Reply as to Movant's Brief in Support of Motion Requesting Lifting Stay with Regard to Non-Debtor Spouse and His Private Property* based upon the following: (i) the Puerto Rico Supreme Court has already adjudicated that the debt is a conjugal debt, without joint and several liability of Mr. Fernandez; (ii) the Supreme Court in its June 10, 2015 Judgment held that, "…the debt at issue was a conjugal debt, that it was included in Debtor's bankruptcy case and that for such reason, the automatic stay protected both spouses, unless there was a contrary order of this Honorable Court concerning the stay's procedural application;" (iii) joint and several liability is never presumed, it has to be clearly expressed for the same to be valid pursuant to Article 1090 of the PR Civil Code, 31 L.P.R.A. §3101; (iv) the Supreme Court has established that if the action or conduct of a spouse (inclusive of non-contractual claims) provides economic benefit to the conjugal estate, the liability will also lie with the conjugal estate. See Lugo v. González, 104 D.P.R. 372, 381 (1975); Albaladejo v. Vilella Suau, 106 D.P.R. 331 (1977); Asoc. Propietarios v. Santa Barbara Co., 112 D.P.R. 33 (1982); (v) in this particular case, the Guillen-Fernandez conjugal partnership derived

economic benefits from the acts that resulted in a civil suit judgment given that the Creditors made monthly payments from April 2, 2005 through November 2007 to both the Debtor and Mr. Fernandez; and (vi) Campolieto v. Anaya, 142 D.P.R. 582 (1997) is inapposite to the instant case because the debtor and her spouse had signed the mortgage loan contract as joint and several debtors, thus judgment was entered against the non-filing spouse for the entire outstanding amount (Docket No. 164).

On August 3, 2016, an evidentiary hearing regarding the Creditors' motion for relief from stay and the Debtor's opposition was held in which counsel for the parties argued their respective positions. Moving Creditors requested to lift the stay as to Mr. Fernandez and his private property because the Supreme court of Puerto Rico determined that the stay was in effect until the bankruptcy proceedings conclude or the stay is lifted. Debtor's counsel alleges that it is a conjugal partnership debt and not of the individuals constituting the conjugal society and that the conjugal partnership is protected under §362(a). Debtor's counsel was ordered to submit copy of Court of Appeals of Puerto Rico judgment dated April 12, 2013 within five (5) days. Thereafter, the matter would be deemed submitted (Docket No. 170).

Extent of automatic stay provisions

The first issue that the court must determine is to whom do the provisions of the automatic stay pursuant to 11 U.S.C. §362(a) apply in the case in which only one of the spouses files for bankruptcy and the economic regime of the marriage is the conjugal partnership pursuant to the provisions of the PR Civil Code. Determining the extent of the automatic stay provisions is the basis for all pending issues in the bankruptcy case and the adversary proceeding. This issue has been the subject of extensive litigation in the state courts. The court will provide an overview of the various state court judgments and orders/resolutions that have addressed the same.

-10-

On August 9, 2007, the Creditors filed a complaint in state court (Case No. EAC 2007-0500) against the Debtor and her husband requesting that they comply with a purchase sale contract, and in the alternative, that the contract be voided and that damages be awarded. On August 16, 2010, the court determined that the Debtor and her husband acted in bad faith and incurred in serious deceit by deliberately portraying that the plot of land they sold to the Creditors could be segregated, when in fact they knew that the plot was in an agricultural conservation area, and thus segregation was not possible. On December 16, 2011 a final Judgment was rendered by the Court of Appeals modifying the Court of First Instance, Caguas Part's Judgment only as to the amounts that had been awarded for damages and mental anguish and the amount of attorney's fees. The Appellate Court affirmed the remainder of the state court's Judgment which held that Mr. Victor Fernández and Teresa Guillen incurred in serious deceit ("dolo causante" and not "dolo incidental") pursuant to Article 1222[1] of the Puerto Rico Civil Code, 31 L.P.R.A. §3409, resulting in the nullity of the purchase sale contract[2] (Docket No. 47, Exhibit A, pgs. 50-52). On June 11, 2012, the Plaintiffs in the state court action (the Creditors/Defendants in this case), filed a *Request for Execution of Judgment* in order to embargo sufficient assets to cover the sum of the claim (Adversary proceeding No. 14-00175, Docket Nos. 66 & 67).

---

[1] Article 1222 of the Puerto Rico Civil Code provides: "[i]n order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties. Incidental deceit renders the party who employed it liable to indemnify for losses and damages only." 31 L.P.R.A. §3409.

[2] The Appellate Court held the following in the Spanish language: "Las circunstancias antes examinadas, permitió al TPI concluir correcta y válidamente que la parte compradora en el contrato de autos, incurrió en dolo y en función de ello, otorgar los remedies concedidos.
    El dolo incurrido por los vendedores es del tipo causante, puesto que la información omitida y la representación hecha, especialmente al requerirle la gestión de la segregación y aportar el dinero para ello, en las circunstancias antes relatadas, incidían sobre una cuestión medular y esencial en esta contratación. Se trató de información que por su naturaleza, de haberla conocido el comprador, probablemente no hubiese entrado en esta transacción." (Exhibit 47, pg. 50).
    The Appellate Court also determined the following in the Spanish language: "Por ser el dolo incurrido por los Fernández-Guillén uno de naturaleza causante, ello produce la nulidad del contrato, como correctamente concluyó el TPI, y, por consiguiente, la devolución de las contraprestaciones" (Docket No. 47, Exhibit A, pg. 51).
    The court cites *verbatim* from the original document in Spanish for clarity purposes. The same applies to all future references in Spanish.

-11-

On July 3, 2012, Mrs. Teresa Guillen Lugo filed her Chapter 13 bankruptcy petition.

On September 4, 2012, Mr. Victor Fernández requested the state court to stay the proceedings in case #EAC-2007-0500. The state court ordered that the proceedings be stayed and reserved its jurisdiction to enact its reopening at any time. On September 18, 2012, the Creditors/Defendants filed a *Motion for Reconsideration* in state court requesting that the proceedings should only be stayed as to the Debtor in case No. 12-05293. On September 25, 2012, the state court rendered an *Amended Resolution* to stay proceedings only as to Debtor Teresa Guillén Lugo, and to continue proceedings against Victor Fernández and the conjugal partnership. The *Amended Resolution* was notified to the parties on October 9, 2012.

On September 28, 2012, Mr. Victor Fernández filed in state court a *Motion in Opposition for Reconsideration* requesting that the proceedings be stayed to protect the property of the conjugal partnership comprised of the Debtor and Mr. Victor Fernández. On October 1, 2012, the Creditors filed a *Response to the Motion in Opposition to Reconsideration* requesting that the proceedings be stayed only as to the Debtor Teresa Guillén Lugo. On October 12, 2012, Mr. Victor Fernández filed a *Request for Reconsideration of the Order of September 4, 2012-10-12* requesting that the Order from the Federal Court staying the proceedings be complied with to protect the assets of the conjugal partnership comprised of Teresa Guillén Lugo and Victor Fernández Ramos. On October 17, 2012, the Creditors filed *their Opposition to "Request for Reconsideration of the Order of September 4, 2012-10-12* requesting the state court to deny Mr. Fernández's reconsideration request because the same is contrary to the law. On October 18, 2012, the state court denied Mr. Fernández's request for reconsideration.

On October 30, 2012, Mr. Fernández filed a certiorari petition before the Puerto Rico Court of Appeals requesting that the September 25, 2012 *Amended Resolution* be revoked and for compliance with the Order from Federal Court staying the proceedings to protect the property of

Teresa Guillén Lugo, Victor Fernández and the conjugal partnership constituted by them[3]. On November 30, 2012, the Creditors filed their answer to the certiorari asserting that Mr. Fernández was responsible for the debt and that his private property was not covered by Plaintiff's bankruptcy petition because that property was solely owned by him, and thus was not included in the bankruptcy petition. On February 14, 2013, the Court of Appeals (Panel X- Caguas-Aibonito Region) reversed the court of first instance decision and stayed all proceedings in conformity with the provisions of the Bankruptcy Code and, secondly, so that such stay includes Mrs. Teresa Guillén Lugo, Mr. Victor Fernández Ramos and the conjugal partnership composed by them[4] (Docket No. 31-8, Docket No. 47-4). The Appellate Court's Judgment was notified on February 25, 2013. On March 12, 2013, the Creditors filed a *Motion for Reconsideration* before the Appellate Court requesting that its Judgment be modified to state that even though the automatic stay is extensive to Mr. Fernández and the conjugal partnership comprised by both spouses, the private assets of Mr. Fernández are still liable and thus the appearing Creditors may recover from

---

[3] The prayer in the certiorari petition stated in Spanish the following: "Por lo antes expuesto solicitamos se revoque la Resolución dictada por el TPI de Caguas el 25 de septiembre de 2012, enmendando la dictada el 4 de septiembre de 2012. Solicitamos que se ordene que se cumpla con la orden del Tribunal Federal Paralizando los procedimientos de los bienes de Teresa Guillén Lugo, Víctor Roberto Fernández Ramos y la sociedad legal de gananciales compuesta por éstos" (Docket No. 31-6, pg. 12).

[4] The Court of Appeals' Judgment stated the following in the Spanish language: "Mediante el mecanismo de la paralización automática, se pone un alto a los procedimientos judiciales o administrativos en contra del deudor, del caudal o los bienes que lo componen ('bankruptcy estate') y de la propiedad del deudor. El no paralizar los procedimientos iría en contravención con la Ley de Quiebras anteriormente citada, debido a que los bienes y obligaciones de la Sra. Teresa Guillén se confunden con los de su cónyuge y con los de la Sociedad Legal de Gananciales y a su vez forman parte del caudal o del 'bankruptcy estate' protegido por la Ley de Quiebras 11 U.S.C. §362.

Dado lo anterior, procede dejar sin efecto el dictamen recurrido y devolver el caso al foro de primera instancia para que, en primer lugar, paralice los procedimientos según dispone la Ley de Quiebras y, en Segundo lugar acoja en dicha paralización a la Sra. Teresa Guillén, el Sr. Victor Fernández y la Sociedad Legal de Gananciales compuesta por ambos, reservándose jurisdicción para decretar su reapertura cuando así lo amerite.

Por todo lo anterior, se expide el auto de *Certiorari* y se dicta sentencia mediante la cual se revoca la orden recurrida. Devolvemos el caso al foro de origen para que actúe de conformidad con lo antes expuesto" (Adversary Procceding 14-00175, Docket No. 31-8, pgs-14-15).

-13-

them.[5] On April 12, 2013, the Court of Appeals rendered an *Amended Judgment* solely to determine that the private assets of Mr. Fernández Ramos are not protected by the automatic stay provisions and that the Creditors may enforce their Judgment rendered on August 16, 2010 and collect against his private assets[6]. On April 23, 2013, Mr. Fernández filed a *Motion for Reconsideration* of the Court of Appeals' *Amended Judgment* requesting compliance with the automatic stay order regarding the proceedings to execute the Judgment against Mr. Fernández be stayed[7] (Adv. Proc. 14-00175, Docket No. 31-11). Mr. Fernandez's Motion for Reconsideration was denied by the Appellate Court.

On June 5, 2013, Mr. Fernández filed a certiorari of the *Amended Judgment* to the Supreme Court of Puerto Rico requesting compliance with the automatic stay order regarding the proceedings to execute the Judgment against Mrs. Teresa Guillén Lugo, her husband, Mr. Víctor Fernández Ramos and the conjugal partnership comprised by them be stayed.[8]

---

[5] The Creditors in their motion for reconsideration requested the following in the Spanish language: "Por lo que respetuosamente se solicita de este Honorable Tribunal que reconsidere su Sentencia, a los efectos de que modifique la misma para que se haga constar que aun cuando la paralización emitida por el Tribunal de Quiebras cubre al Sr. Victor Roberto Fernández Ramos y la Sociedad Legal de Gananciales compuesta por ellos, los bienes privativos del codemandado Fernández Ramos responden a sus acreedores, los aquí comparecientes" (Adv. Proceeding 14-00175, Docket No. 31-9).

[6] The Court of Appeals' Amended Judgment in the Spanish language reads as follows: "Se enmienda la Sentencia dictada el 14 de febrero de 2013 a los únicos fines que los bienes privativos del señor Víctor Roberto Fernández Ramos, cónyuge que no se sometió a la protección de la quiebra ante el foro federal, respondan a los demandantes de epígrafe. Por lo tanto, dejamos sin efecto la paralización decretada mediante la *Sentencia* aludida con relación únicamente a los bienes privativos del señor Victor Roberto Fernández Ramos a fin de hacer efectivo el cobro de la Sentencia dictada el 16 de Agosto de 2010 contra sus bienes privativos" (Docket No. 31-10, pg. 3).

[7] Mr. Fernández in his motion for reconsideration requested the following in the Spanish language: "Por lo antes expuesto solicitamos se reconsidere la Resolución enmenda[n]do la Sentencia del 14 de febrero de 2013, revoque la Resolución dictada por el TPI de Caguas el 25 de septiembre de 2012, enmendando la dictada el 4 de septiembre de 2012. Y se ordene cumplir con la orden automática de paralización de los procedimientos de ejecución de sentencia contra el Sr. Víctor Roberto Fernández Ramos" (Docket No. 31-11, pg. 7).

[8] Mr. Fernández in his certiorari to the Supreme Court of Puerto Rico requested the following in the Spanish language: "Por lo anteriormente expuesto solicitamos se revoque la Resolución que enmendó la Sentencia del 14 de febrero de 2013, revoque la Resolución dictada por el TPI de Caguas el 25 de septiembre de 2012, enmendando la dictada el 4 de septiembre de 2012. [Y] se ordene cumplir con la orden automática de paralización tanto contra Teresa Guillén Lugo como contra de su esposo, el Sr. Víctor Roberto Fernández Ramos y la Sociedad Legal de Gananciales por ellos compuesta" (Docket No. 31-12, pg. 24).

On June 10, 2015, the Supreme Court rendered its *Judgment* revoking the Amended Judgment of the Court of Appeals and ordering that all the proceedings be stayed until the bankruptcy process which was initiated by Mrs. Guillén Lugo has culminated or the relief from the automatic stay is granted by the federal forum. The translated Supreme Court Judgment states as follows:

> "The writ of *certiorari* was filed before this Court on June 5, 2013. It requests the review of an amended judgment from the Court of Appeals, issued on April 12, 2013, through which continuation of a procedure to execute judgment only against the private assets of Mr. Víctor Fernández Ramos, husband of Mrs. Teresa Guillén Lugo. The latter had filed a request for bankruptcy before the federal court and later requested that the Court of First Instance stay the proceedings under section 362(a) of the federal Bankruptcy Code, 11 U.S.C. §362(a). The debt that was being attempted to [be] collect[ed] through the proceeding of execution of judgment was part of the bankruptcy estate, as it was a debt owed by the Conjugal Partnership comprised by Mr. Fernández Ramos and Mrs. Guillén Lugo. On October 25, 2013, we issued the writ filed.
>
> Having evaluated the file and the applicable Law, the dictate by the Court of Appeals is revoked and the stay of all proceedings is ordered until the bankruptcy proceeding filed by Mrs. Guillén in the federal court is finalized or a remedy is obtained of relief from the stay by said court.
>
> The Court so decreed and the Supreme Court Secretary so certifies. Associate Judge Mrs. Rodríguez Rodríguez issued an Opinion in Agreement joined by Chief Justice Mrs. Fiol Matta and Associate Judge Oronoz Rodríguez. Associate Judge Mr. Feliberti Cintrón issued a Dissenting Opinion"[9] (Lead Case, Docket No. 128, pgs. 4-5).

---

[9] The Judgment rendered by the Supreme Court of Puerto Rico reads as follows in the Spanish language:

"El presente recurso de *certiorari* fue presentado ante este Tribunal el 5 de junio de 2013. En éste, se solicitó la revisión de una sentencia enmendada del Tribunal de Apelaciones, dictada el 12 de abril de 2013, mediante la cual se ordenó la continuación de un procedimiento de ejecución de sentencia únicamente en contra de los bienes privativos del Sr. Víctor Roberto Fernández Ramos, cónyuge de la Sra. Teresa Guillén Lugo. Esta última había presentado una solicitud de quiebra ante el foro federal y, posteriormente, solicitó ante el Tribunal de Primera Instancia la paralización de los procedimientos al amparo de la sección 362(a) del Código de Quiebras Federal, 11 U.S.C. §362(a). La deuda que se intentaba cobrar mediante el procedimiento de ejecución de sentencia formaba parte del caudal de quiebra, puesto que era una deuda de la Sociedad Legal de Gananciales compuesta por el Señor Fernádez Ramos y la señora Guillén Lugo. El 25 de octubre de 2013, expedimos el recurso presentado.

Evaluado el expediente y el Derecho aplicable, se revoca el dictamen del Tribunal de Apelaciones y se ordena la paralización de todos los procedimientos hasta tanto culmine el procedimiento de quiebra instado por la señora Guillén Lugo en el foro federal o se obtenga un remedio de relevo de paralización por parte de ese foro.

Whether the provisions of the automatic stay are extensive to the private property of the non-debtor spouse and, thus, protecting the same from collection is a related but different legal issue from whether a creditor is entitled to recover (collect on) a "community debt/claim" ("deuda ganancial") from the private assets of the non-debtor spouse (irrespective of whether the other spouse has filed a bankruptcy petition). A creditor must first determine whether it has a community claim based upon the type of debt it is owed and whether the community property is liable under state law. An overview of the pertinent sections of the Bankruptcy Code and the applicable state law will be discussed below.

Who may be a debtor

The tern "debtor" is a defined term which "… means person or municipality concerning which a case under this title has been commenced." 11 U.S.C. §101(13).  Only a person may file a voluntary petition under chapters 7, 11, 12 and 13. 11 U.S.C. §109. The term "person" is a defined term which "…includes individual, partnership, and corporation, but does not include governmental unit…" 11 U.S.C. §101(41). Only individuals may file for bankruptcy under Chapter 13. 11 U.S.C. §109(e). The conjugal partnership or community property are not considered as entities for the purpose of commencing a case. See 1-4 Collier Family Law and the Bankruptcy Code P 4.02[1] ("Although a married person may wish to file a petition under the Bankruptcy Code as to his or her interest in community property and related obligations, thereby attempting to protect the separate property of either or both spouses, the aggregate community property of a married couple is not considered a person or an entity. Consequently, a spouse or spouses cannot treat community property as an entity for the purpose of commencing a case").

Así lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad a la que se unen la Jueza Presidenta señora Fiol Matta y la Jueza Asociada Oronoz Rodríguez. El Juez Asociado señor Feliberti Cintrón emitió una Opinión Disidente" (Lead Case, Docket No. 121, pgs. 9-10).

Thus, a conjugal partnership is not considered a debtor pursuant to 11 U.S.C. §101(13), (41) and may not file for bankruptcy under 11 U.S.C. §109(e).

Property of the Bankruptcy Estate pursuant to 11 U.S.C. §541

Once a married debtor files a bankruptcy petition (without her or his spouse) an estate is created, which consists of both the debtor's separate property and community property pursuant the provisions of section 541(a)(2). Section 541(a)(2) provides that the commencement of a case creates an estate, comprised of property which includes:

> "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
> (A) under the sole, equal, or joint management and control of the debtor; or
> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. 541(a)(2)(A) & (B).

It is a well-established principle in Bankruptcy Law that property interests are determined pursuant to state law unless a particular federal interest requires a different result. See Butner v. U.S., 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-918, 59 L. Ed. 2d 136, 141-142 (1979), quoting Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L. Ed. 2d 323, 327 (1961) ("…Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy'"). Thus, the pertinent state law must be analyzed to determine whether a creditor has the right to collect its debt from community property

-17-

and/or from the private assets of the non-debtor spouse if that community claim was not entirely paid through the bankruptcy process.

The term "community property" is not defined in the Bankruptcy Code but is employed to refer to those states in which marital property is regulated through a community property economic regime. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶ 101.07[1], fn. 2 (16th ed. 2016). "If a creditor has the right under state law to collect from community property defined under 11 U.S.C. §541(a)(2), it has a community claim, which carries rights to collect from the bankruptcy estate. The creditor meets this definition even if there are no such assets actually in the estate. Thus, the creditor's hypothetical collection rights with respect to classifications of community property under state law must be analyzed in order to determine whether a particular creditor meets the definition." Margaret Dee McGarity: *Community Property in Bankruptcy: Laws of Unintended Consequences*, 72 La. L. Rev. 143, 145 (2011). Therefore, a creditor is entitled to collect from community property if he or she has a community claim under state law.

What is a Community Claim?

A community claim is defined as, "… a claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. §101(7). To have a community claim, three (3) factors must be satisfied; namely: "(1) it must be a debt owed by one of the spouses; (2) it must be satisfiable from community property under applicable state law; and (3) the community property from which the debt could be satisfied under state law must be included within the assets which would pass to the debtor's bankruptcy estate, whether or not such assets exist at the commencement of the case. Thus, under

-18-

the foregoing tests, whether a creditor holds a community claim will be determined by state law" Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶ 101.07[2] (16th ed. 2016).

In the instant case, the claim in controversy satisfies all the three requirements for it to be a community claim since it is a debt owed by both spouses, the creditors may recover payment for that debt from the community property (or the assets of the conjugal partnership), and the community property has been included as part of the bankruptcy estate.

The liability in the community property is also determined on whether the state law classifies the claim as a "community debt" or as a "separate debt." "Under state law, there are two prevailing theories of liability in community property states. In those states that follow the 'community debt' doctrine, the community is considered to have the capacity to incur debts, and is liable for an obligation of a spouse if that spouse was acting as an agent of the marital community. Otherwise, the obligation is classified as a 'separate debt,' which typically results in restrictions on the type or amount of community property from which it can be satisfied, or wholly bars the claim from satisfaction from community property. The alternative theory of liability under state law rejects the community debt doctrine and attributes a liability to the spouse who incurs it. In these states, it is irrelevant (except for marshaling considerations) whether or not the debt was incurred for separate or community purposes. Debts are attributable to a particular spouse and may be satisfied from that spouse's separate and community property" Id. at ¶101.07[2].

The PR Civil Code is the body of law that regulates the conjugal partnership in Puerto Rico, the assets that are considered community property and thus, pertain to the conjugal partnership, the types of debts that may be recovered against community property, and the types of debts that may be recovered against a spouse's separate property (private property).

-19-

Articles 1295 through 1326 of the PR Civil Code, 31 L.P.R.A. §§3621-3701, provide the legal structure for the juridical figure of the conjugal partnership in Puerto Rico.

Article 1296 of the PR Civil Code provides: "the conjugal partnership is created on the day of marriage, 31 L.P.R.A. §3622.

Article 1298 of the PR Civil Code provides:

"The conjugal partnership shall be governed by the rules of articles of partnership in all that does not conflict with the express provisions of this chapter." 31 L.P.R.A. §3624.

Article 1299 of the PR Civil Code provides:

"The following is the separate property of each spouse:

(1) That brought to the marriage as his or her own.
(2) That acquired by either of them during the marriage by lucrative title, that is to say, by gift, legacy or descent.
(3) That acquired by right of redemption or by exchange for other property belonging to one of the spouses only.
(4) That brought with money belonging exclusively to the wife or to the husband" 31 L.P.R.A. §3631.

Article 1301 of the PR Civil Code provides:

"To the conjugal partnership belong:

(1) Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.
(2) That obtained by the industry, salaries, or work of the spouses or of either of them.
(3) The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses" 31 L.P.R.A. §3641.

Article 1307 of the PR Civil Code provides:

"All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife" 31 L.P.R.A. §3647.

Article 1308 of the PR Civil Code provides:

"Chargeable to the community property shall be:

(1) All debts and obligations contracted during the marriage by either of the spouses.

-20-

(2) The arrears or credits deriving during the marriage from obligations encumbering the private property of the spouses as well as the community property.

(3) Minor repairs or mere maintenance repairs made during the marriage on the private property of either of the spouses. Major repairs shall not be chargeable to the community property.

(4) Major or minor repairs of the community property.

(5) The support of the family and the education of the children begotten in common and those of either of the spouses.

(6) Personal loans incurred by either of the spouses" 31 L.P.R.A. §3661.

Article 1310 of the PR Civil Code provides:

"The payment of debts contracted by the husband or by the wife, before marriage, shall not be borne by the partnership.

Neither shall it bear the payment of fines or of pecuniary condemnations which may be imposed on either of them.

However, the payment of debts contracted by the husband or by the wife, prior to the marriage, and that of fines and condemnations imposed on either of them, may be claimed against the partnership property, after covering the expenses, mentioned in §3661 of this title, if the debtor spouse should have no private capital, or were it insufficient; but at the time of the liquidation of the partnership the payments, made for the specified causes, shall be charged to said spouse" 31 L.P.R.A. §3663.

It is important to note that the *Judgment* ("Sentencia") from the Puerto Rico Supreme Court already determined that the Creditors' claim is a conjugal debt or a debt owed by the conjugal partnership.[10] Therefore, this court will proceed with its analysis in light of this determination. Associate Judge Mrs. Anabelle Rodríguez Rodríguez issued an *Opinion in Agreement,* and was joined by Chief Justice Mrs. Fiol Matta and Associate Judge Oronoz Rodríguez, in which they concluded that the debt at issue is a conjugal partnership debt and it is inappropriate for a creditor to request payment from one of the members of the conjugal partnership to pay the debt in its entirety, given that he does not respond personally,[11] and joint

---

[10] The Judgment rendered by the Supreme Court of Puerto Rico as translated in the English language reads in pertinent part: "The debt that was being attempted to [be] collect[ed] through the proceeding of execution of judgment was part of the bankruptcy estate, as it was a debt owed by the Conjugal Partnership comprised by Mr. Fernández Ramos and Mrs. Guillén Lugo."

[11] The conclusion of the Opinion in Agreement as translated in the English reads as follows:

-21-

and severally liability ("responsabilidad solidaria") between contracting spouses is never presumed and must be expressly agreed in conformity with Article 1090[12] of the PR Civil Code.

> "Pursuant to the interaction between the provisions regarding the automatic stay of judicial proceedings, the property that comprises the estate of a debtor under the federal Bankruptcy Code and the nature of the Conjugal Partnership as a judicial entity *sui generis* in our legal system, it must be concluded that the intermediate appellate court erred when it ordered the continuation of the proceedings against Mr. Fernández Ramos' personal property. As we have discussed, we have before us a debt by a Conjugal Partnership whose assets currently are part of the estate in bankruptcy before the federal court. Therefore, it is inappropriate to allow a creditor to demand that one of the members of this marital partnership pay the total amount of the debt when, as we pointed out, he does not respond personally. In addition, the intermediate appellate court erred when it concluded that this was about an assumption of solidarity between the contracting spouses as it is a reiterated rule of our legal system that solidarity is never presumed and must be expressly consigned in order to be effective. See 31 L.P.R.A Sec. 3101.
>
> Because the obligation before us corresponds to the Conjugal Partnership and not to its members personally, I agree that the stay of all proceedings in execution of judgment be decreed, including those that may be directed against Mr. Fernández Ramos' personal property. This is so on the understanding that, currently, the debt that is attempted to be claimed is part of the estate in bankruptcy and the automatic stay of any judicial claim pending over it impedes that any creditor may indirectly collect his/her debt by moving against the personal property of one of the members of the Partnership. As I stated before, it is unfortunate that a majority of the members of Court are unwilling to set the rule that is to govern in our legal system regarding such a prickly matter" (Lead case, Docket No. 128, pgs. 14-15).

The conclusion of the Opinion in Agreement reads as follows in the Spanish language:

> "Conforme a la interacción entre las disposiciones relativas a la paralización automática de procedimientos judiciales, la propiedad que compone el caudal de un deudor bajo el Código de Quiebras federal y la naturaleza de la Sociedad Legal de Gananciales como una entidad jurídica *sui generis* en nuestro ordenamiento, es preciso concluir que el foro apelativo intermedio erró al ordenar la continuación de los procedimientos en contra de los bienes privativos del señor Fernández Ramos. Como discutimos, estamos ante una deuda de la Sociedad Legal de Gananciales, cuyos bienes en la actualidad forman parte del caudal de quiebra en el foro federal. Por tanto, es improcedente permitir a un acreedor exigir a uno de los miembros de ese consorcio marital que pague la totalidad de la deuda, cuando como señalamos, este no responde personalmente. Además, el foro apelativo intermedio erró al concluir que se trataba de un supuesto de solidaridad entre los cónyuges contratantes, pues es norma reiterada en nuestro ordenamiento que la solidaridad nunca se presume y debe consignarse expresamente para que surta efectos. Véase L.P.R.A. §3101.
>
> Debido a que la obligación que nos ocupa le corresponde a la Sociedad Legal de Gananciales, y no a sus integrantes en su carácter personal, estoy conforme con que se decrete la paralización de todos los procedimientos de ejecución de sentencia, incluyendo aquellos que puedan ser dirigidos en contra de los bienes privativos el señor Fernández Ramos. Esto por entender que al momento, la deuda que se intenta reclamar forma parte del caudal de quiebra y la paralización automática de cualquier reclamación judicial que pende sobre éste impide que un acreedor pueda indirectamente cobrar su deuda dirigiéndose en contra de los bienes privativos de uno de los integrantes de la Sociedad. Como anticipé, es lamentable que una mayoría de los integrantes de este Tribunal estén renuentes a pautar la norma que ha de regir en nuestro ordenamiento en cuanto a un asunto tan espinoso" (Lead case, Docket No. 121, pgs. 26-27)

[12] Article 1090 of the PR Civil Code provides:

-22-

A Dissenting Opinion was rendered by Associate Judge Roberto Feliberti Cintrón in which he concluded that a spouse's private assets respond in a supplementary manner for the conjugal debt that resulted from the intentional tortious conduct of both spouses. In his analysis, Judge Feliberti also concludes that the debt is a conjugal debt and therefore this type of debt is paid from the community (conjugal) assets. Judge Feliberti explains that contrary to the dispositions of the Appellate Court, there is no statutory provision which allows for community debts (conjugal debts) to be paid in a subsidiary (supplementary) manner from the private assets of the members that comprise the conjugal partnership. However, the conjugal partnership is liable (in a subsidiary manner) pursuant to Article 1310 of the PR Civil Code for the private debts of the husband or wife as long as the financial solvency of the partnership is not at risk, that is, that after the obligations of the conjugal partnership pursuant to Article 1308 of the PR Civil Code have been satisfied. He further explains that the private assets of Mr. Fernández would be liable if he were personally responsible for the debt such as in the case of an obligation in which there was joint and severally liable responsibility ("responsabilidad solidaria") as in the case of Campolieto v. Anaya. [13] Judge Feliberti concludes that due to the particular and extreme

"The concurrence of two (2) or more creditors, or of two (2) or more debtors in a single obligation, does not imply that each one of the former has a right to ask, nor that each one of the latter is bound to comply in full with the things which are the object of the same. This shall only take place when the obligation determines it expressly, being constituted as a joint obligation." 31 L.P.R.A. §3101.

[13] The Dissenting Opinion states in pertinent part in the Spanish language as follows:

"En este case no se ha dado tal cuestionamiento de parte de alguno de los cónyuges, por lo que no existe motivo para rechazar la naturaleza ganancial de la deuda. El peticionario apoya su recurso sobre la base ganancial de la deuda por Sentencia, mientras que la señora Guillén incluyó la totalidad de la obligación en su petición ante el Tribunal de Quiebras. Siendo así, se repute ganancial y son los bienes gananciales los llamados a responder por los dineros fijados por el tribunal. 'Para reclamar una deuda de carácter ganancial, debe el acreedor dirigirse contra los bienes gananciales, esto es, demandar a la sociedad' Pauneto v. Núñez, *supra,* pág. 595 (cita omitida).

De otra parte, es preciso señalar que, contrario a lo intimado por el foro apelativo intermedio en su Resolución del 12 de abril de 2013, en el caso de deudas gananciales no existe disposición estatutaria que provea un mecanismo que permita cobrar subsidiariamente del patrimonio privativo de sus miembros. De conformidad con el Código Civil, la excusión de bienes opera únicamente en virtud de su Art. 1310. Es decir, se limita aquellas situaciones en que no haya suficientes haberes privativos disponibles para cubrir obligaciones

-23-

circumstances of this case and the serious deceit carried out by the Debtor and her spouse, the creditors should be able to go against the private assets of Mr. Fernández up to 50% of the amount of the debt based on principles of justice and equity. [14]

particulares de uno de sus miembros. Es únicamente entonces que la masa ganancial viene llamada a responder subsidiariamente, pero condicionado a que se cubran primeramente ciertas necesidades gananciales básicas.

Igualmente, el hecho de que la deuda se repute ganancial no convierte a los miembros de la sociedad legal de gananciales en codeudores solidarios de esta entidad jurídica como indicó el Tribunal de Apelaciones. Es preciso recordar que durante la vigencia del matrimonio el patrimonio ganancial coexiste independiente de los bienes privativos de los cónyuges. Por lo tanto, sus respectivas obligaciones y haberes se mantienen separados lo que imposibilita que surja la solidaridad entre ellos.

En este caso, tanto el patrimonio ganancial de los esposos Fernández Guillén, como el personal de la señora Guillén, están amparados por el procedimiento de quiebra. Es decir, los acreedores se ven imposibilitados de acceder a los fondos privativos de la señora Guillén, así como los comunes gananciales para hacer válida la Sentencia que pesa en su contra.

Los bienes privativos del señor Fernández no comparten esta protección. Conforme la doctrina, podrían responder en la medida en que éste sea personalmente responsable de la deuda que se intenta cobrar. Esto es, en caso de una obligación particular independiente de aquellas que le corresponden en calidad de miembro de la sociedad ganancial como sería, por ejemplo, una situación de responsabilidad solidaria según atendimos en Campolieto v, Anaya, supra" (Lead case, Docket No. 121, pgs. 47- 49).

[14] The Dissenting Opinion states in pertinent part in the Spanish language as follows:

"En consecuencia con lo anterior, los esposos Fernández-Guillén incurrieron en conducta dolosa grave. Es decir, participaron en los actos deliberados que propiciaron en los actos deliberados que propiciaron el vicio en el consentimiento de los recurridos y la eventual nulidad del negocio. De este modo, se conjugaron los requisitos cardinales del dolo grave que provocan la captación del consentimiento en la formación del contrato y permiten su nulidad, según dispone el Art. 1222 del Código Civil. A base de ello, entendemos que la conducta dolosa antes descrita sobre la cual se asienta la reclamación en este caso no debe quedar impune. Las circunstancias exigen que concibamos medidas especiales de justicia y equidad para atender los perjuicios sobrevenidos a los recurridos como resultado de la nulidad contractual que, de otro modo, quedarían al descubierto aun cuando existan haberes en el patrimonio privativo. 'La equidad, como se sabe, quiere decir algo que es justo.' Silva v. Comisión Industrial, 91 D.P.R. 891, 898 (1965). Después de todo, nuestra función de impartir justicia va de la mano con la equidad, principio que permea todo el derecho. S.L.G Sánchez v. S.L.G. Valentín, 186 D.P.R. 503, 515 (2012). 'La equidad nació precisamente de la necesidad de atemperar el rigor de la norma, mediante un recurso a la conciencia del juzgador.' CMI Hospital v. Depto. de Salud, 171 D.P.R. 313, 325 (2007) (citas omitidas). Véase además, BPPR v. Sucn. Talavera, 174 D.P.R. 686, 695 (2008).

En situaciones extremas como la presente, no existe justificación para que uno de los esposos se escude detrás del manto ganancial con el propósito de evitar responder con sus bienes privativos por daños deliberadamente ocasionados mediante sus propios actos. Opinamos, por lo tanto, que en escenarios de responsabilidad ganancial por la conducta intencional grave de los esposos que resulte en el menoscabo de derechos, el perjudicado tiene la potestad de reclamar el resarcimiento de sus daños subsidiariamente de los bienes privativos de los cónyuges" (Lead case, Docket No. 121, pgs. 49-51.

-24-

After considering the interaction of applicable state law and bankruptcy code provisions, this court concludes that the provisions of the automatic stay are not extensive to the non-debtor spouse or to his private property. However, as discussed herein, the provisions of the automatic stay are extensive to community property pursuant to sections 362(a) and 541(a)(2). 11 U.S.C. §§ 362(a) and 541(a)(2). The automatic stay provisions of § 362(a) only protect the debtor and property of the estate.

In the instant case, the creditors' claim is a conjugal debt (or a community debt) and the provisions of the PR Civil Code do not provide for a conjugal debt (community property debt) to be satisfied (collected) in a supplementary manner from the private assets of a spouse.

The case of Campolieto v. Anaya, 142 D.P.R. 582, 589 (1997) is inapposite to the instant case because the facts and issues are different. The legal issues in Campolieto were the following: (i) once the discharge order of the filing debtor has been entered and thereafter the debtor spouse and the non-debtor spouse get divorced, does the discharge order protect the community property and the future property pertaining to that community; (ii) once the conjugal partnership has been dissolved, and upon the liquidation of the community property which property is protected by the discharge injunction; (iii) once the conjugal partnership has been dissolved and liquidated can a creditor go against the non-filing ex-spouse, as a co-debtor (with joint and severally liable responsibility); and (iv) is the creditor is allowed to go against the non-debtor ex-spouse's private property or is the same protected by the discharge order. The court held that since the conjugal partnership had been dissolved the creditor may go against the private assets of the non-debtor ex-spouse but limited to half the amount of the total debt owed.

In this case, requesting that the conjugal debt claim be satisfied from the non-debtor's private assets is inappropriate because the creditors are not going to be able to go against the private assets of Mr. Fernández pursuant to the provisions of the PR Civil Code (state law).

This court notes that a creditor may use 11 U.S.C. §1328(a)(2) as a mechanism to except a particular debt from discharge if it is a debt included in section §523(a)(2)[15]. "For a debt to fall within this exception, money, property or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud[16]. The purposes of the provisions are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. Before the exception applies, the debtor's fraud must result in a loss of property to the creditor." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.08[1][a] (16th ed. 2016).

The creditor bears the burden to pursue the exception to dischargeability of a debt and objection to discharge within sixty (60) days of the first date set for the meeting of creditors in conformity with Fed. R. Bankr. P. 4007. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1328.02[3][d] (16th ed. 2016). However, in the instant case, the creditors did not

---

[15] For a complete discussion regarding the discharge exception pursuant to 11 U.S.C. §523(a)(2); See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.08[1][a]-[e] (16th ed. 2016).

[16] "Not all frauds are included within the exception of section 523(a)(2)(A), but only those involved in the obtaining of money, property or services by 'false pretenses or false representations.' Actual fraud, as distinguished from false pretenses or false representations, is discussed below. The frauds included in the portion of section 523(a)(2)(A) under discussion are those that in fact involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient. To except a debt from discharge under section 523(a)(2)(A), the false representations giving rise to the debt must have been knowingly and fraudulently made. Reckless representations may in some cases be sufficient to except the debt from discharge. A debtor's silence regarding a material fact can constitute a false representation under section 523(a)(2)(A). A material fact is one touching upon the essence of the transaction." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.08[1][d] (16th ed. 2016).

Moreover, "[a] misrepresentation by a debtor of his or her intention to perform contractual duties, however, may be a false representation under section 523(a)(2)(A). Thus, section 523(a)(2)(A) may make a creditor's claim nondischargeable if the debtor had no intention of performing any of the obligations under the contract. This intent may be inferred from the fact that the debtor failed to take any steps to perform under the contract." Id. at ¶523.08[1][d].

employ section 1328(a)(2), even though they had a final state court Judgment which held that Mr. Victor Fernández and Teresa Guillen had incurred in serious deceit ("dolo causante") pursuant to Article 1222 of the Puerto Rico Civil Code, 31 L.P.R.A. §3409, resulting in the nullity of the purchase sale contract. The court makes this note as to this important aspect of this case because it does not want to give the impression that a debtor may file for bankruptcy and be able to get a discharge of a particular debt which resulted from serious deceit.

Conclusion

In view of the foregoing, the court concludes that the provisions of the automatic stay are not extensive to the non-debtor spouse or to his private property. However, the provisions of the automatic stay are extensive to community property pursuant to 11 U.S.C. §541(a)(2).

In reaching its conclusion the court differentiates the legal issues in this case, namely, whether the provisions of the automatic stay are extensive to the private property of the non-debtor spouse protecting the same from collection, and whether a creditor is entitled to collect on a community claim ("deuda ganancial") from the private assets of the non-debtor spouse as a purely state law issue (irrespective of whether one of the spouses has filed for bankruptcy protection). The classification of a debt (whether it is a community debt or a private debt) incurred during marriage affects the way a creditor may collect on the debt in conformity with state law.

Consequently, the court orders as follows:

1. The court grants the creditors' motion requesting clarification of the protection granted by the automatic stay and concludes that the automatic stay provisions are not extensive to the non-debtor spouse or to his private property. However, the automatic stay provisions do extend to community property.

2. Debtor's objection to the Creditors' proof of claim number 4 is denied. The claim is allowed as a community claim for the amount filed.

3. The motion to lift the automatic stay to allow collection action from the private property of the non-debtor spouse is denied as the debt is a conjugal debt, and pursuant to state law may not be satisfied from the private assets of the non-filing spouse.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of November 2017.

Enrique S. Lamoutte
United States Bankruptcy Judge